1

2   LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
    Floyd E. Ivey (WSBA 6888)
3   1141 N. Edison, Suite C, P.O. Box 6125
    Kennewick, Washington 99336
4
    Tel: 509-735-3581
5   Fax: 509-735-3585

6   Attorneys for Plaintiff,
    PHILIP PULVER and CATALOGS
7   ONLINE INC., A Washington
    Corporation
8

9           IN THE UNITED STATES DISTRICT COURT
10       FOR THE EASTERN DISTRICT OF WASHINGTON

11
    PHILIP PULVER and              )
12  CATALOGS ONLINE, INC., a       )
    Washington Corporation,        )
13                                 )   **NO.**  CV-05-5028-RHW
            Plaintiffs,            )
14                                 )   **FIRST AMENDED**
                                   )   **COMPLAINT FOR TRADE**
15  vs.                            )   **SECRET MISAPPROPRIATION,**
                                   )   **UNFAIR COMPETITION,**
16                                 )   **UNFAIR BUSINESS PRACTICES,**
                                   )   **BREACH OF FIDUCIARY DUTY,**
17                                 )   **VIOLATION OF THE**
                                   )   **ECONOMIC ESPIONAGE ACT,**
18  **BATTELLE MEMORIAL**          )   **INTERFERENCE WITH**
    **INSTITUTE, a non-profit**    )   **BUSINESS EXPECTANCY,**
19  **corporation, dba PACIFIC**   )   **CONSPIRACY,**
    **NORTHWEST LABORATORY**       )   **MISREPRESENTATION,**
20  **and/or PACIFIC NORTHWEST**   )
    **NATIONAL LABORATORY;**       )
21  **JOHN DOE I through JOHN**    )
    **DOE XX**                     )
22                                 )   JURY TRIAL DEMANDED
            Defendants.            )
23  _____ )

24                          **PARTIES**

25      1.  Plaintiff sets forth its First Amended Complaint.  Plaintiff PHILIP

26  PULVER resides in Benton County, State of Washington.  Mr. PULVER has

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK          LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
    INFRINGEMENT, TRADEMARK DILUTION, UNFAIR              Attorneys at Law
    COMPETITION, DAMAGES, PUNITIVE DAMAGES AND             P.O. Box 6125
    INJUNCTIVE RELIEF                                Kennewick, Washington 99336-0125
    Page 1 of 49                                          (509) 735-3581
    Z:\IPClient\Pulver\Pulver v.
    PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

provided services to PNNL as Pulver Consulting Services.  PHILIP PULVER and Pulver Consulting Services are hereafter identified as PULVER.  CATALOGS ONLINE INC., hereafter CATALOGS, is a Washington corporation wholly owned by PHILIP PULVER and doing business in Benton county, State of Washington.  Custom Catalogs Online Inc., Mobile Data Methods and CCOL are dba's of CATALOGS ONLINE INC.

Defendant Battelle Memorial Institute, hereafter BMI, is a corporation which was incorporated in Ohio, BMI is exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code because it is organized for charitable, scientific and educational purposes, and which has its principal place of business in Columbus, Ohio.  All or a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred within Benton County, State of Washington. BMI's business activities within Benton County, State of Washington, includes business conducted by BMI dba Battelle Pacific Northwest Laboratories and or Battelle Pacific Northwest National Laboratories, hereafter PNNL, which business constitutes significant contacts with the Eastern District of Washington.

JOHN DOE I through X are persons unknown believed to reside in states other than Washington State.  JOHN DOE XI THROUGH XX are persons unknown residing in states unknown to the Plaintiffs.

## JURISDICTION

2.  Damages to Plaintiffs exceed $75,000.000 excluding interest and costs. Jurisdiction is proper within this District under 28 U.S.C. 1332(a) and Venue is proper within this District under 28 U.S.C. 1391(a) and 1391(c).

## GENERAL BACKGROUND

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 2 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

3. From 1993 to 1995, Mr. Philip Pulver was employed with BMI/PNNL as the Manager of Software Commercialization for PNNL. In September 1995 Mr. Pulver left Battelle as an employee and in December 1995 commenced subcontractor services for BMI/PNNL as a sole proprietor dba Pulver Consulting Services with primary tasks to commercialize software and web site development. Mr. Pulver is the sole owner and principal of Catalogs Online Inc., a Washington corporation dba Custom Catalogs Online Inc., Mobile Data Methods Inc. and CCOL, which has entered into contracts with BMI relative to PalmFon and Mobile Data Manager.

4. Plaintiffs' continue recitation of the background for Causes of Action of Trade Secret Misappropriation, Unfair Competition, Unfair Business Practices, Wire Fraud, Violation of the Economic Espionage Act, Interference with Business Expectancy, Misrepresentation, Conspiracy. The Causes of Action relate to a BMI/PNNL software product **PalmFon** and the software product disclosed conceived of and divulged by PULVER/CATALOGS to BMI/PNNL named **Mobile Data Manager.**

### *PALMFON*

5. In May 2001 BMI/PNNL, through its employees and agents, represented to PULVER, the United States Department of Energy (hereafter DOE) and to the public, that development had been completed of computer software named PalmFon and that PalmFon software enabled handheld PocketPC or Palm users to extract information from standard databases. The development of PalmFon was funded by the DOE. The representation at the PNNL Website, http://availabletechnologies.pnl.gov/infotechnology/pal.stm, stated in 2001 and in

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 3 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

2005 the following:

PalmFon
Battelle No. 13071
Patent No. N/A, Protected by Copyright

PalmFon is a customizable, corporate white pages system written for the Palm Pilot range of personal digital assistants (PDAs). The system comprises a browsing application that runs on the PDA (for viewing and searching the white pages), and a suite of administration web pages that control the customization of the white pages. These administration web pages are designed to integrate to any relational database and extract employee information such as name, address and phone number from it. This extracted information is then compressed and converted into a form suitable for loading onto the Palm device for use within the browser application. The system is targeted at the full range of Palm OS devices, currently including Palm III, Palm V, Palm VII and Handspring Visor products.

Pagemaster: Cameron.Bates@pnl.gov Cameron.Bates_AT_pnl_DOT_gov
Date: January 2005

6.    BMI/PNNL employees and agents, with the representation of the completed development of PalmFon, solicited PULVER/CATALOGS to license, from BMI/PNNL, and commercialize PalmFon.  BMI/PNNL employee and representative Mr. Chris Parkinson represented in March 2001 as follows:

Invention Report

PalmFon - A Corporate White Pages for Palm OS Devices

March 7th 2001

Chris Parkinson

Environmental Molecular Sciences Laboratory,
Pacific Northwest National Laboratory, Richland, WA 99352

Introduction
PalmFon is a customizable, corporate white pages system written for the Palm Pilot range of personal digital assistants (PDAs). The system comprises a browsing application that runs on the PDA (for viewing and searching the white pages), and a suite of administration web pages that control the customization of the white pages. These administration web pages are designed to integrate to any relational database and extract employee information such as name, address and phone number from it. This extracted information is then compressed and converted into a form suitable for loading onto the Palm device for use within the browser application. The system is targeted at the full range of Palm OS devices, currently including Palm III, Palm V, Palm VII and Handspring Visor products.

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 4 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1

2      7.  PULVER/CATALOGS, in reliance on the representations of BMI/PNNL

3   and Mr. Parkinson,  negotiated with BMI/PNNL primarily through BMI/PNNL

4   employee and representative Mr. Mark L. Goodwin, commencing in early to mid

5   2001, for a licensing agreement to commercialize PalmFon.  On or about January

6   2002, a Licensing Agreement between BMI/PNNL and CATALOGS was

7   executed, a copy of which is annexed hereto as Exhibit 1-PalmFon Licensing

8   Agreement.  PalmFon software was delivered to PULVER/CATALOGS in

9   January 2002.

10      Attachment A to the Licensing Agreement lists SOFTWARE licensed under

11   Article 2 including PalmFon Version 1.0(Battelle IPID No. 13071) and  bears the

12   statement "These SOFTWARE Products were developed with funding from the

13   United States Government."  Article 2 of the Licensing Agreement is entitled "2.

14   LICENSE" and states in part "...B.  This Paragraph 2B is applicable only to

15   SOFTWARE produced with Government funding; Attachment A, Column 2 gives

16   the date to be inserted below for each SOFTWARE product where applicable.

17   The license granted pursuant to Paragraph A hereof is subject to any rights the

18   Government of the United States of America may presently have or may assert in

19   the future for any reason..."  By contract or statute BMI/PNNL was obligated to

20   make payments to DOE for royalty or licensing revenues realized by BMI/PNNL

21   through the Licensing of PalmFon.

22

23      8. PULVER/CATALOGS were unable to operate the PalmFon software.

24   PULVER/CATALOGS undertook reasonable and diligent communications with

25   BMI/PNNL and its employees and agents in an attempt to operate the PalmFon

26   software.  PULVER/CATALOGS contracted for and received independent

27

28   FIRST AMENDED COMPLAINT FOR TRADEMARK          LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
     INFRINGEMENT, TRADEMARK DILUTION, UNFAIR                    Attorneys at Law
     COMPETITION, DAMAGES, PUNITIVE DAMAGES AND                    P.O. Box 6125
     INJUNCTIVE RELIEF                              Kennewick, Washington 99336-0125
     Page 5 of 49                                              (509) 735-3581
     Z:\IPClient\Pulver\Pulver v.
     PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

software consultation in an attempt to operate the PalmFon software.  The PalmFon software delivered by BMI/PNNL was not usable outside of PNNL.

9.  BMI/PNNL and its employees and agents including Mr. Parkinson, Mr. Goodwin and unknown JOHN DOES, at the time of solicitation of PULVER/CATALOGS, knew that representations of PalmFon functionality and operability were false and comprised misrepresentations and fraud.  In the alternative, BMI/PNNL through its employees and agents including Mr. Parkinson, Mr. Goodwin and unknown JOHN DOES knew, at the time of solicitation, that PalmFon  was inoperable; or, in the alternative, BMI/PNNL and its employees and agents including Mr. Parkinson, Mr. Goodwin and unknown JOHN DOES, at the time of solicitation of PULVER/CATALOGS, knew that PalmFon was operable, as represented, and that said BMI/PNNL and its employees or agents, including Mr. Mike Schwenk, prior to delivery of PalmFon software to PULVER/CATALOGS, disabled and rendered inoperable PalmFon software from functioning as represented.

10.  The misrepresentation of the operability and functionality of the PalmFon software or the rendering inoperable of the PalmFon software and the delivery of inoperable PalmFon software to PULVER/CATALOGS damaged PULVER/CATALOGS in an amount which amount will be proven at trial.

PULVER/CATALOGS did not know of the misrepresentation and damage until PULVER/CATALOGS approached BMI/PNNL and Mr. Kevin Dorow seeking assistance in advancing the PalmFon software for use with InterSystems, Inc. at which time BMI/PNNL through Mr. Dorow conducted further operability and functionality examinations of PalmFon software and with Mr. Dorow

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 6 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

advising of the inoperability and functionality of PalmFon software in March 2002 at which time BMI/PNNL and Mr. Dorow commenced receiving payment from DOE-TAP funds previously authorized for PULVER/CATALOGS for the purpose of preparing for a trade show demonstration, scheduled for April 2002, involving new mobile data software to replace the dysfunctional PalmFon software.

The misrepresentation of the operability and functionality of the PalmFon software was accomplished by BMI/PNNL, Mr. Parkinson and Mr. Goodwin by wire including internet, telephone and email. The representations by BMI/PNNL, Mr. Parkinson, Mr. Goodwin and others including JOHN DOES I THROUGH XX, constituted material misrepresentations of existing fact; the falsity of which was known to BMI/PNNL, Mr. Parkinson and Mr. Goodwin and JOHN DOES I THROUGH XX, were made with the intent to cause PLAINTIFFS to act with BMI/PNNL, Mr. Parkinson and Mr. Goodwin and JOHN DOES I THROUGH XX, knowing of PLAINTIFFS' ignorance of the falsity of the misrepresentations. PLAINTIFFS' relied on and had the right to rely on the truth of the representation with resulting damage to PLAINTIFFS in amounts to be proven at the time of trial. The misrepresentations and acts of delivery of inoperable and non-functional PalmFon software, for which BMI/PNNL and Mr. Parkinson and other employees and representatives of BMI/PNNL were paid by DOE, denied DOE royalties that would have resulted from commercial sales of the PalmFon software and constituted fraud against DOE.

11. Mr. Chris Parkinson, BMI/PNNL Employee and the developer of the DOE-funded PalmFon software, represented to PULVER/CATALOGS, in early to mid 2001, that the development was complete and that the completed PalmFon

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 7 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

software enabled handheld Palm users to extract information from standard databases.  Mr. Parkinson submitted an invention report dated March 7, 2001 and entitled "Invention Report - PalmFon - A Corporate White Pages for Palm OS Devices, Chris Parkinson, Environmental Molecular Sciences Laboratory, Pacific Northwest National Laboratory, Richland, WA 99352."

   12. Mr. Parkinson, as BMI/PNNL employee or agent,  had worked with PULVER/CATALOGS on commercializing other BMI/PNNL software since 1997, approached PULVER/CATALOGS, on behalf of BMI/PNNL, in May 2001 soliciting PULVER/CATALOGS to license, market and commercialize the PalmFon software.  Mr. Parkinson's support of his solicitation of PULVER/CATALOGS included Mr. Parkinson's construction of a Web Site with a demonstration of the functioning PalmFon.  PULVER/CATALOGS, in response to the BMI/PNNL solicitation, commenced market research, pursuing and developing sales channels and taking additional action to comprehensively analyze the action required to commercialize PalmFon.  Mr. Parkinson  notified Mr. Pulver, by wire via telephone, email and internet, copied to Mr. Mark L. Goodwin, BMI/PNNL representative, on Wednesday, July 18, 2001 8:16 AM as follows:

   "Subject: External Web Site for PalmFon.  The PalmFon external web site / demo web site is now up and running at the following URL:http://sywell.emsl.pnl.gov.  This site will be up permanently, and is suitable for advertising with CBD announcements etc...Chris"

That Web site included the following text prominently displayed:

   "PalmFon - Corporate Data, Anytime, Anyplace...PalmFon is an application suite designed to place large amounts of corporate data into the hands of

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 8 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

users for anytime, anyplace access. PalmFon allows easy access to internal corporate databases from either the Web or from handheld computers such as Palm Pilots and Windows Pocket PC devices. PalmFon ties into ANY standard relational database (i.e., Oracle, Sybase MySQL etc...) and is easily configured to allow just the right information out to users. "

13. BMI had a 90-day right of first refusal to commercialize PalmFon, or any other DOE-funded technology, which expired by July 2001.  This event allowed PULVER/CATALOGS to commence  negotiation of a license agreement with BMI/PNNL via BMI/PNNL representative Mr. Goodwin, with an overall terms and agreement formed by July 31, 2001.  Mr. Parkinson and BMI/PNNL facilitated, on behalf of the DOE, the filing for copyright registration with the DOE approving the copyright filing of PalmFon software by late July, 2001.

14.  Mr. Parkinson, in September 2001, provided documentation to PULVER/CATALOGS, including but not limited to Commerce Business Daily (CBD)  announcements.  These documents, including Mr. Parkinson'S PalmFon Web site, were very specific, clear and consistent on the critical functionality of PalmFon.  The subsequent positive market response realized by PULVER/CATALOGS, confirms that the stated PalmFon functionality had high commercial potential.

15.  Mr. Parkinson, in October 2001, provided detailed information regarding PalmFon to PULVER/CATALOGS  resulting in PULVER/CATALOGS placing an announcement in Commerce Business Daily seeking additional distributors, marketers and resellers of the PalmFon software.  In response to the

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 9 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

announcement Tyrone Daniels of Ohio based Onyx expressed high interest in becoming a marketing agent for PalmFon and submitted a proposal to PULVER/CATALOGS in October 2001.

16.  The PalmFon Licensing Agreement, executed between BMI/PNNL and PULVER/CATALOGS, in January 2002, was executed on behalf of BMI/PNNL by its representative, Mr. Mike Schwenk.  BMI/PNNL, Mr. Parkinson, and Mr. Goodwin knew, as early as 2001, that the PalmFon software either was inoperable and not functional as represented by BMI/PNNL and its representatives, or that the operable and functional PalmFon software, to be delivered and as delivered to PULVER/CATALOGS had been rendered inoperable and not functional. BMI/PNNL, Mr. Schwenk, Mr. Parkinson, and Mr. Goodwin and other representatives of BMI/PNNL acted in concert and conspired to license the PalmFon software either knowing of its inoperability and non-functionality as represented, and or to render the PalmFon software inoperable and non-functional, prior to and for delivery to PULVER/CATALOGS.  BMI/PNNL, Mr. Parkinson, and Mr. Goodwin and other representatives of BMI/PNNL formed, assisted by wire communications including email, internet and telephone, and entered into an agreement to misrepresent PalmFon as operable and functional or to render inoperable and non-functional PalmFon to deprive PLAINTIFFS of their business prospects in the sale of PalmFon with said conspiracy damaging PLAINTIFFS and depriving the DOE of royalties rightfully accruing from the commercialization of PalmFon and depriving Government use of the functioning PalmFon.

17.  Mr. Parkinson, in January 2002, resigned from BMI/PNNL to work for

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 10 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    Alien Technology, a BMI/PNNL spin out which develops RFID and other mobile

2    technologies.

3

4        18. PULVER/CATALOGS contacted, in February 2002,  PNNL technical

5    staff  Carlson and Connell, for assistance in operating the PalmFon software.  .

6

7        19.  BMI/PNNL representative Mr. Dorow, confirmed in  March 2002, that

8    the PalmFon software was not maintainable, fixable, or enhanceable .

9    Inoperability and removal of original functionality was indicated, on or about

10   March 1, 2002, by an independent software consultant who determined that the

11   PalmFon software had been altered from the original software code configuration,

12   described in the Mr. Parkinson invention report and the Mr. Parkinson PalmFon

13   Web Site, by hard coding the PalmFon software to only work with the BMI/PNNL

14   phone directory, thereby making it commercially useless.  The conclusions of

15   inoperability and lack of functionality by BMI/PNNL staff and by an independent

16   consultant is contrasted with the functionality that Mr. Parkinson and BMI/PNNL

17   had clearly and consistently represented to PULVER/CATALOGS, the DOE and

18   the public in 2001 via Web site, email, telephone, handwritten diagrams from Mr.

19   Parkinson,  copyright-related documents and conferences.

20

21       20.  As of March 2005, three years after BMI/PNNL through its staff Mr.

22   Dorow  determined PalmFon was unusable outside of BMI/PNNL, BMI/PNNL

23   continues to represent the PalmFon software as available for licensing on its Web

24   site.  The removal of this representation from the BMI/PNNL Web site would be

25   an admission to the DOE, PULVER/CATALOGS and the public that the PalmFon

26   software is inoperable.

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 11 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

21.  The delivery of inoperable PalmFon software to PULVER/CATALOGS, in January 2002, is the first act, relative to PULVER/CATALOGS,  by BMI/PNNL and its representatives wherein BMI/PNNL and its representatives assisted one another and cooperated in a scheme or pattern whereby BMI/PNNL submitted billings to the DOE and  received DOE funding. PalmFon was licensed to PULVER/CATALOGS, was delivered in a dysfunctional condition such that the product was commercially useless thereby eliminating the prospects of royalties to the DOE and rendering the License Agreement and PalmFon software valueless to PULVER/CATALOGS to the damage of PULVER/CATALOGS in an amount to be proven at the time of trial.  This first act comprises conduct of an enterprise through a pattern of activity or a scheme, supported by the use of wire, email, telephone and internet communication, for the purpose of and conspiring to deprive PULVER/CATALOGS of the fruits of the PalmFon software Licensing Agreement.

22.  The events of September 11, 2001, and their aftermath revealed the criticality of mobile communication technologies and demonstrated the commercial need for a product with functionality attributed by BMI/PNNL and its representatives to PalmFon software, i.e., data communication from standard databases to Palm or Pocket PC devices.  The PalmFon software product was represented to communicate from a database to a Palm or Pocket PC device.  Such attribution was made in a BMI/PNNL invention report dated March 2001 and at a BMI/PNNL PalmFon Web site launched in July 2001.

### *MOBILE DATA MANAGER*

PULVER/CATALOGS, in November 2001 acquired the domain name

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 12 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

www.mobiledatamanager.com and in January 2002, received an inquiry from InterSystems Inc., the leading worldwide supplier of database products and services to healthcare  providers and other markets.  PULVER/CATALOGS proposed to develop a completely new product named Mobile Data Manager, hereafter MDM.  By March 2002, PULVER/CATALOGS had conceived of and began developing the specification for MDM, a software product designed for Palm and Pocket PC users to receive(download) and send(upload) information to and from standard databases.  By March 2002, PULVER/CATALOGS had conducted extensive market research demonstrating the marketing potential for MDM.  The PULVER/CATALOGS specification, activities and discussions with MDM current or prospective partners, in and market research comprises valuable Trade Secret information protected by RCW 19.108.020 as information deriving independent economic value from not being generally known to, not being readily ascertainable by proper means by other persons, including BMI/PNNL and its representatives, who can obtain economic value from its disclosure or use.  The indicated MDM specification and MDM marketing/sales information and analysis was disclosed to BMI/PNNL including  Mr. Dorow and Mr. Goodwin in performance of the BMI/PNNL technical assistance pursuant to the DOE-TAP agreements.

PULVER/CATALOGS, prior to March 2002, had  qualified for DOE-TAP funding and had DOE-TAP funding available to obtain technical assistance from BMI/PNNL.  PULVER/CATALOGS approached BMI/PNNL representative Mr. Dorow, and disclosed to Mr. Dorow the initial specification of the new MDM product and disclosed the marketing research including specific discussions and plans, regarding MDM, with InterSystems; Mr. Dorow and BMI/PNNL agreed to provide technical assistance to PULVER/CATALOGS in return for payment from

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 13 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

the DOE-TAP funds available to PULVER/CATALOGS.  After numerous consultations with PULVER/CATALOGS in March and April 2002, Mr. Dorow developed a prototype MDM version that had functionality sufficient for PULVER/CATALOGS to demonstrate the MDM prototype at an InterSystems booth at a  Salt Lake City trade show in April 2002.

23.  The PULVER/CATALOGS first draft of the new specification was communicated to BMI/PNNL and Mr. Dorow by at least March 2002 with initial funding for BMI/PNNL and Mr. Dorow provided by the preexisting DOE-TAP agreements.  Thereafter PULVER/CATALOGS qualified for additional DOE-TAP agreements for the specific purpose of providing funding for payment of BMI/PNNL and its representatives, including Mr. Dorow, for technical assistance for the development of the MDM product for PULVER/CATALOGS.

Thereafter PULVER/CATALOGS provided numerous revisions of the new specification and detailed marketing analysis and sales opportunities and conferred in personal conferences and teleconferences numerous times with BMI/PNNL and its representatives, including Mr. Dorow, with BMI/PNNL and Mr. Dorow agreeing to assist while being paid by the DOE-TAP fund program, in developing the MOBILE DATA MANAGER product for PULVER/CATALOGS.

BMI/PNNL assistance pursuant to payments from the DOE-TAP agreements for the benefit of PULVER/CATALOGS, are described at a Pacific Northwest National Laboratory Web site, as of February 20, 2005, stating in part:

Release date: September 3, 1996

Contact: Media & External Communications, (509) 375-3776

## Free technical assistance offered to businesses

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 14 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

RICHLAND, WA -- Local businesses...can draw on the expertise of federal laboratories, at no charge, through a new Department of Energy-funded technical assistance program.

Under the new Technical Assistance Program...businesses can receive assistance from the Pacific Northwest National Laboratory....

The program is managed by Pacific Northwest.... DOE has designated $300,000 of its economic transition funding for TAP.

"Firms that are not necessarily technology-based but that could benefit from technological support can receive assistance free-of-charge through TAP," explains TAP Manager Gary Spanner, Pacific Northwest. "Assistance may include materials characterization, new product development, scientific peer review of a concept, advice on environmental technologies, chemical process improvements and factory modernization, just to name a few."

"Pacific Northwest is a unique asset in this region and an important tool that local businesses now can take advantage of through TAP," says Dave Dillman, TRIDEC. "Using its marketing resources and industrial contacts, TRIDEC will serve as a liaison for TAP to team businesses with the resources of Pacific Northwest...."

Webmaster: webmaster@pnl.gov

Reviewed: April 2001

24. PULVER/CATALOGS continued to receive MDM product development assistance from BMI/PNNL and its representatives, including Mr. Dorow, with the understanding that the DOE-TAP funded assistance was for the purpose of producing a product for PULVER/CATALOGS per the MDM specifications delivered to BMI/PNNL by PULVER/CATALOGS for the commercialization of

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 15 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1   the product to customers or through marketing partners and or resellers identified

2   by PULVER/CATALOGS in its extensive marketing activities and analysis.

3   MDM product specifications were evolved by PULVER/CATALOGS and

4   marketing analysis matured through the research and product specification

5   development of PULVER/CATALOGS many times prior to June 12, 2002.

6

7       25.  By June 13, 2002 Mr. Dorow produced a "PNNL Investment Proposal",

8   noted as Version 02.1.0, stating in part

9       "...the proposed ...investment will deliver the ...[MDM]...software

10      architecture at a commercially viable level of maturity (i.e., shrink-wrapped

11      software)..   ...Building on an already established functional prototype, the

12      investment will be used......The investment will result in a marketable

13      product with high-return potential......The MDM software currently exists in

14      an advance prototype state......Once these tasks are completed the resulting

15      product will be unique in the market, providing dynamic generation of data

16      view / edit interfaces on handheld devices for any existing databases with no

17      programming required. ...Since MDM is already in a functional state, the

18      risks associated with technology are small (the concept has already been

19      proven)...Time-to-market is a potential risk–At this time no other product on

20      the market provides the functionality the MDM does...The business risks

21      associated with MDM are small...One of the Labs strategic objectives is:

22      "Deployment of Highly Beneficial Technologies".  MDM would be highly

23      beneficial in that it could have major impacts to mission accomplishment,

24      society, and the economy by: Being broadly available for, and delivering

25      high value to, DOE and other governmental missions.  Providing substantial

26      social and economic benefits to the region and the nation.  MDM would also

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 16 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

be beneficial in that it would provide substantial returns from commercialization. These returns are invested in the refreshment of Laboratory staff and infrastructure and in Battelle to support future strategic growth....Commercialization is the major reason for producing MDM, which falls in line with one of the Lab's goals to move its technologies out of the laboratory and into commercial applications where they can solve critical problems for industry and society. By producing and commercializing MDM will be achieving the following goals set fourth by the Technology Commercialization department in the Lab:---...Financial returns to PNNL provide reinvestment in facilities, equipment, people, and technology....PNNL-developed intellectual property fuels Battelle's commercialization program....Demand for this technology is worldwide as evidenced by the inquiries and interest so far. A few examples of this interest and associated market sizes are given below:—InterSystems Inc....has expressed interest in packaging MDM as an add-on product to their Medical Database System, used by most of the top hospitals, labs, and healthcare application providers in the world...the potential sales could occur at 3500 locations....the potential total revenue would be $1,750,000. InterSystems underlying database technology, Cache, is also used in the financial services...offering other potential applications of the MDM technology. The states of Texas, Ohio, and Washington have expressed interest in using MDM...[with]...potential revenue ...$1,125,000. Several public utility districts have expressed interest in using MDM...[with]...potential revenue could exceed $1,000,000....The total of the potential revenues for these three applications yields an ROI of about 5100 (and this is for specific examples in three market areas–interest for use of

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 17 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    MDM has also been expressed in several others).

2

3    The specific MDM marketing opportunities and corresponding revenue

4    projections were developed by PULVER/CATALOGS through extensive trade

5    secret market research, market analysis and establishment of business

6    relationships and other trade secrets.

7

8    26.  Mr. Dorow's June 13, 2002 "PNNL Investment Proposal", noted as

9    Version 02.1.0" BMI/PNNL claimed to be the only owner of MDM with no

10    recognition of the fact of the ownership of underlying trade secrets and other

11    proprietary information underlying MDM by PULVER/CATALOGS with

12    DOE/BMI/PNNL receiving rights limited to those obtained by DOE from the

13    DOE-TAP funding paid to BMI/PNNL.  The June 13, 2002 "PNNL Investment

14    Proposal" was to move the MDM project away from DOE-TAP funding to the

15    private corporate funding of BMI/PNNL under the BMI/PNNL IR&D funding or

16    other funding sources.  The "PNNL Investment Proposal" proposal stated in part:

17    　　　Battelle is the sole owner of the IP associated with MDM.  This project will

18    　　　enhance the value of that IP.

19

20    27.  On or about July 8, 2002, Mr. Dorow presented a proposal for

21    BMI/PNNL funding of the MDM project by a document entitled "...FY03 PNNL

22    IR&D Pre-Proposal Format" identified as "Investment Title: Mobile Data

23    Manager" and directed to "Investment Manager" and "Level 1 Steward Mike

24    Lawrence".  PNNL IR&D (Internal Research and Development), 1831, is funding

25    from BMI/PNNL for the private corporate interests of BMI/PNNL which is

26    separate from DOE-TAP funding which is government funding for the benefit of

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 18 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

DOE and the intended DOE-TAP recipient(s) that DOE encourages to participate. The proposal states in part:

"...The Mobile Data Manager (MDM) is a software system...that provides database access and updates via hand held devices....a description of the MDM software is available on the http.//www.pnnl-software.com web site (select Mobile Data Manager).  The proposed project will advance the existing MDM functional prototype to a commercially viable level of maturity (i.e., shrink-wrapped software)....the current MDM advanced demonstration prototype was developed under funding from the Laboratory's Technical Assistance Program.  Several private companies have shown an interest in the product, including InterSystems (leader in Healthcare records database systems), Palm–Federal division...Philip Pulver of Custom Catalogs Online is a licensed distributor of MDM and has been actively marketing the product (at no cost to Battelle) in several business areas including health care, law enforcement, and electronic catalogs....The MDM demonstration prototype was developed to enable DOE staff and contractors to deploy data and databases to field operations.  ...The major benefit of MDM is its flexibility for extracting data for immediate mobile use without the mobile data deployment.  MDM is being designed to also meet requirements of the private sector.

28.  PULVER/CATALOGS, on August 8, 2002, provided additional marketing information to BMI/PNNL pursuant to the request of BMI/PNNL employee and representative Mr. Goodwin.  PULVER/CATALOGS delivered a spreadsheet projecting sales through InterSystems Inc to the private sector at $7,921,875.00.  A separate itemization of clients by categories identified 18

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 19 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  categories of customers.  On August 14, 2002 Mr. Goodwin interrogated Mr.

2  Pulver re: the PULVER/CATALOGS commercialization plans for MDM.  On or

3  about August 14, 2002, Mr. Goodwin used the PULVER/CATALOGS MDM

4  specification to draft a specification for BMI/PNNL.

5

6  29.  On or about September 6, 2002, Mr. Pulver asked BMI/PNNL employee

7  Mr. Thomas F. Coonelly for an example or template for BMI IR&D proposals.

8  Mr. Coonelly sent an email to PULVER/CATALOGS entitled

9      "Tech details on PDAC – The strategy for creating PDAC at commercially

10      viable level of maturity includes the following key tasks:"

11      The Coonelly email demonstrates the BMI/PNNL plagiarism or copying of

12  the MDM specification, which was provided by PULVER/CATALOGS to

13  BMI/PNNL and Mr. Dorow and known to Mr. Goodwin and Mr. Robert R. Silva,

14  commencing as early as March 2002 with revisions provided to Mr. Dorow

15  through July 2002, for the BMI/PNNL product PDAC.  The BMI/PNNL

16  plagiarism of the MDM specification is misappropriation of the MDM

17  specification for the interests of BMI/PNNL.

18

19  30.  BMI/PNNL representative Bill Farris, head of the IR&D committee, told

20  PULVER/CATALOGS  on September 6, 2002, that although the new MDM

21  software already developed resulted from PULVER/CATALOGS' specification,

22  that BMI/PNNL had intentions of taking MDM for BMI/PNNL purposes

23  independent of PULVER/CATALOGS.

24

25  31.  A PULVER/CATALOGS marketing partner, David Dillman, was

26  advised, on or about September 16, 2002, by BMI/PNNL representative Mr. Mike

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 20 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

Schwenk that Mr. Goodwin and Mr. Silva were working on the BMI/PNNL

mobile data software.  PULVER/CATALOGS gave detailed verbal [via

telephone] and email notice to Mr. Schwenk of the plagiarism and that Mr.

Goodwin and Mr. Silva were directly using the MDM specification for the

BMI/PNNL software.  Mr. Schwenk did verbally admit, via wire by telephone, the

plagiarism but did not respond to Mr. Pulver's email notice.


32.  On or about September 24, 2002, Mr. Dorow admitted to

PULVER/CATALOGS  that Mr. Goodwin and Mr. Silva had plagiarized the

MDM specification.  On or about October 31, 2002, Mr. Pulver confronted Mr.

Goodwin  regarding 1. the MDM plagiarism, just after Mr. Goodwin interrogated

Mr. Pulver on commercialization plans for MDM, and 2. regarding Mr.

Goodwin'S acts of interference, abuses, and endless delay of advancing the MDM

product which BMI/PNNL was developing for PULVER/CATALOGS and was

being paid for by DOE-TAP funds.  These additional acts damaged

PULVER/CATALOGS by the inability to timely introduce MDM as a commercial

product.


33.  On or about December 2, 2002, PULVER/CATALOGS met with Mr.

Heister, an employee of BMI/PNNL, and other BMI/PNNL employees including

Mr. Dorow.  Mr. Heister stated that BMI/PNNL would develop a version of

mobile data software; at that meeting Mr. Dorow successfully demonstrated the

working MDM software to PULVER/CATALOGS; Mr. Dorow then provided a

document that verified that MDM had functionality prior to December 5, 2002.

Mr. Dorow  also stated that PalmFon was no longer being used at BMI/PNNL.

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 21 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

34.  On or about April 22, 2003, Mr. Dorow admitted to PULVER/CATALOGS that BMI/PNNL was demonstrating the functioning MDM software to prospective clients of BMI/PNNL.  Mr. Dorow advised that prospective client contact information was withheld from PULVER/CATALOGS at the directive of Mr. Goodwin and that BMI/PNNL was considering forming a technical support center for MDM to service BMI/PNNL clients.

In a June 30, 2003 phone call with PULVER/CATALOGS, Mr. Dorow stated that Mr. Dorow and Mr. Goodwin were submitting a 2003 IR&D pre-proposal to develop a derivative, enhanced MDM version that would compete with and undercut PULVER/CATALOGS.  Mr. William Farris, chairman of the BMI/PNNL IR&D Committee during the 2002 PDAC misappropriation in an IR&D proposal, had allowed the new 2003 Mr. Dorow/Mr. Goodwin MDM proposal to be sent to the committee.

35.  In October, 2003, PULVER/CATALOGS reported the BMI/PNNL misrepresentations and conspiracy to the DOE- OIG regarding MDM.  In February 2005, PULVER/CATALOGS reported the BMI/PNNL misrepresentations, conspiracy and sabotage  to the DOE - OIG regarding PalmFon.  Together, both PULVER/CATALOGS contacts with the DOE-OIG reported the fraud of BMI/PNNL in invoicing and receiving payment from DOE for PalmFon and MDM while misappropriating, misrepresenting and conspiring to deprive PULVER/CATALOGS from the financial benefits of Licensing agreements for PalmFon and MDM and to deprive DOE of royalties relative to PalmFon and MDM and the use by the Government itself.

35A.  *SUMMARY:  THE BMI/PNNL STRATEGY OF TAKING MDM*

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 22 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  ***FROM PULVER/CATALOGS OF DEPRIVING  PULVER/CATALOGS OF***

2  ***RESOURCES WITH WHICH TO RESIST:***  BMI/PNNL and its representatives

3  and employees advertised to the public that ***FREE*** technical assistance was

4  available to businesses from BMI/PNNL where BMI/PNNL would be paid by

5  DOE-TAP funds.  BMI/PNNL stated in part the following –

6       Release date: September 3, 1996

7       Contact: Media & External Communications, (509) 375-3776

8       ### Free technical assistance offered to businesses

9       RICHLAND, WA -- Local businesses...can draw on the expertise of

10      federal laboratories, at no charge, through a new Department of

11      Energy-funded technical assistance program.

12      Under the new Technical Assistance Program...businesses can receive

13      assistance from the Pacific Northwest National Laboratory....

14      The program is managed by Pacific Northwest....

15

16      When PULVER/CATALOGS approached BMI/PNNL and Mr. Dorow in

17  March, 2002, PULVER/CATALOGS had in place a DOE-TAP agreement with

18  funding available but with the DOE-TAP agreement directed for other projects..

19  BMI/PNNL and Mr. Dorow received MDM specification and marketing

20  information from PULVER/CATALOGS, commencing in March, 2002 ostensibly

21  for the purpose of providing the **"Free technical assistance offered to**

22  **businesses"** and BMI/PNNL and Mr. Dorow received payment from the

23  preexisting DOE-TAP agreement.

24      On April 1, 2002, PULVER/CATALOGS submitted a new DOE-TAP

25      application stating the request for technical assistance as follows:

26      Enhance PNNL PalmFon Software that was licensed to CCOL.  This

27

28  
FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 23 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

includes enabling the software PDA users to change database on handheld devices.  JAVA skills are needed (J2ME).  PALM o/s JDBC.  Request: Kevin Mr. Dorow-line manager Tom Coonlley OK. Kevin has already made some fixes to PalmFon.  NEEDED FOR APRIL DEMO.

What are your expectations regarding the outcome of assistance from the federal government?

Working demo for STC conference on April 29th 2002 in Salt Lake City.

To the best of my knowledge, the assistance requested of the federal government is not reasonably available in the private sector.

On April 8, 2002, Dr. Gary F. Spanner, Manager, Office of Small Business Programs, Battelle Memorial Institute Pacific Northwest National Laboratory Office of Small Business Programs, authorized the April 1, 2002 DOE-TAP application by PULVER/CATALOGS.  This authorization provided additional DOE-TAP funds for payment to BMI/PNNL, Mr. Dorow and other representatives and employees of BMI/PNNL for their assistance to the PULVER/CATALOGS MDM product development..

On June 5, 2002, Mr. Silva, an employee of BMI/PNNL, called one of PULVER/CATALOGS MDM marketing partners and disparaged the MDM project and upset the partner and potential investor.  Subsequently, PULVER/CATALOGS warned BMI/PNNL to cease with this inference and

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 24 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

1    expressed concern about BMI/PNNL violating confidentiality of

2    PULVER/CATALOGS MDM sales/marketing information.

3

4        By June 13, 2002 Mr. Dorow produced a "PNNL Investment Proposal"

5    stating in part "...MDM would also be beneficial in that it would provide

6    substantial returns from commercialization.  These returns are invested in the

7    refreshment of Laboratory staff and infrastructure and in Battelle to support future

8    strategic growth....Commercialization is the major reason for producing MDM,

9    which falls in line with one of the Lab's goals to move its technologies out of the

10   laboratory and into commercial applications where they can solve critical

11   problems for industry and society.  By producing and commercializing MDM will

12   be achieving the following goals set fourth by the Technology Commercialization

13   department in the Lab:---...Financial returns to PNNL provide reinvestment in

14   facilities, equipment, people, and technology....PNNL-developed intellectual

15   property fuels Battelle's commercialization program....Demand for this

16   technology is worldwide as evidenced by the inquiries and interest so far..."

17

18       In August 2002: Mr. Goodwin admitted that the BMI/PNNL product

19   development, in parallel with the BMI/PNNL DOE-TAP funded assistance to

20   PULVER/CATALOGS for MDM software, would directly compete with the

21   BMI/PNNL strategy of its business development of DOE-Environmental

22   Management Advantage software and other homeland security technologies.

23

24       In an August 29, 2002 meeting with PULVER/CATALOGS, Mr. Goodwin,

25   directed by Ms. Cheryl Cejka, an employee of BMI/PNNL, demanded that

26   PULVER/CATALOGS and the MDM partners submit letters of intent for

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 25 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

BATTELLE private [1831] consulting business as a condition for BMI/PNNL allowing the Federally-funded DOE-TAP MDM project to resume even though DOE had previously approved the MDM funding.  PULVER/CATALOGS advised BMI/PNNL that such action would constitute a quid-pro-quo and thus violate kickback laws of the Federal Acquisition Regulations.

On September 16, 2002, Mr. Schwenk, admitted to Mr. Dillman, a PULVER/CATALOGS MDM marketing partner, that Mr. Goodwin and Mr. Silva work were working on their BMI/PNNL equivalent mobile software.  In an immediate phone call, PULVER/CATALOGS confronted Mr. Schwenk who confirmed Mr. Dillman's allegations.  In a September 24, 2002 phone call with PULVER/CATALOGS, Mr. Dorow openly admitted that Mr. Goodwin and Mr. Silva had plagiarized PULVER/CATALOGS specification and other work on MDM in the BATTELLE IR&D proposal for the BMI/PNNL competitive mobile software named PDAC.

Throughout August to October 2002, Mr. Goodwin demanded legally and factually unworkable licensing conditions to derail and disrupt the MDM project; Mr. Goodwin harassed PULVER/CATALOGS MDM marketing partners and also disparaged PULVER/CATALOGS and the MDM project.  The MDM partners responded by contacting Mr. Schwenk and requested that Mr. Goodwin cease tactics that were undermining the MDM project and endangering MDM business opportunities.

In a December 2002 meeting with PULVER/CATALOGS, Mr. Heister, an employee of PNNL/BATTELLE, stated that BMI/PNNL would be developing

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 26 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    their own version of mobile data software.  In that same meeting, Mr. Dorow

2    successfully demonstrated the working MDM software to PULVER/CATALOGS;

3    Mr. Dorow then provided a document that verified that MDM had functionality

4    prior to this demonstration.  Mr. Dorow also stated that PalmFon was no longer

5    being used internally at BMI/PNNL.

6

7         In April 2003, Mr. Dorow admitted to PULVER/CATALOGS that

8    BMI/PNNL was demonstrating the functioning MDM software to prospective

9    clients of BMI/PNNL.  Mr. Dorow withheld the contact information from

10   PULVER/CATALOGS at the direction of Mr. Goodwin.  Mr. Dorow also stated

11   that BMI/PNNL was strongly considering building a technical support center for

12   MDM to service Battelle clients.

13

14        In a June 30, 2003 phone call with PULVER/CATALOGS, Mr. Dorow

15   stated that he and Mr. Goodwin were submitting a 2003 BMI/PNNL IR&D pre-

16   proposal to develop a derivative, enhanced work of MDM version that would

17   compete with and undercut PULVER/CATALOGS.  Mr. William Farris, chairman

18   of the BATTELLE IR&D Committee at the time of the copying of the MDM

19   specification for BMI/PNNL use with PDAC, in 2002, allowed the new 2003 Mr.

20   Dorow/Mr. Goodwin MDM proposal to be sent to the committee.

21

22        On July 25, 2003, Mr. Bruce Harrer, an employee of BMI/PNNL,

23   confirmed that the pre-proposal for MDM enhancements, submitted by Mr.

24   Dorow and Mr. Goodwin, was approved for the final round of proposals for

25   investment consideration by the IR&D committee.  Mr. Harrer admitted that such

26

27

28   FIRST AMENDED COMPLAINT FOR TRADEMARK              LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
     INFRINGEMENT, TRADEMARK DILUTION, UNFAIR                        Attorneys at Law
     COMPETITION, DAMAGES, PUNITIVE DAMAGES AND                       P.O. Box 6125
     INJUNCTIVE RELIEF                                        Kennewick, Washington 99336-0125
     Page 27 of 49                                                    (509) 735-3581
     Z:\IPClient\Pulver\Pulver v.
     PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

investment would violate the MDM license agreement between BMI/PNNL and PULVER/CATALOGS.

On August 29, 2003, Mr. Dorow delivered MDM software source code to PULVER/CATALOGS.

In a September 10, 2003 phone call, Mr. Dorow admitted to PULVER/CATALOGS that the MDM code delivered to PULVER/CATALOGS on August 29, was embarrassing and did not function. Mr. Dorow then stated that PULVER/CATALOGS would receive a working version of the MDM software only on the condition that PULVER/CATALOGS and the MDM partners pay private consulting fees to BMI/PNNL.  Mr. Dorow also offered to demonstrate the working MDM version to PULVER/CATALOGS if Mr. Goodwin and other employees of BMI/PNNL were convinced that such demonstration would result in BMI/PNNL private consulting revenue

In September 2003 PULVER/CATALOGS initiated contact with the United States Department of Energy, Office of Inspector General, hereafter DOE-OIG, and in October 2003 PULVER/CATALOGS submitted details of the DOE-TAP assistance from BMI/PNNL and details of the BMI/PNNL parallel preparation of a mobile product intended to be competitive with the PULVER/CATALOGS Mobile Data Manager (MDM).  Throughout this time PULVER/CATALOGS had continued to provide computer software and web site contract services to BMI/PNNL.

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 28 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    In a March 26, 2004 email, Mr. Sandusky, an employee of BMI/PNNL,

2  admitted that BMI/PNNL was suddenly preventing PULVER/CATALOGS from

3  providing sub-contracting services to BMI/PNNL.

4

5    On April 2, 2004, Mr. Sandusky, an employee of BMI/PNNL in an email

6  and a phone call to PULVER/CATALOGS, acknowledged that BMI/PNNL was

7  selectively intercepting and blocking incoming emails from

8  PULVER/CATALOGS, and admitted that blocking or filtering such

9  communication to BMI/PNNL harmed PULVER/CATALOGS contracting

10 business.

11

12    In a June 11, 2004 phone call to PULVER/CATALOGS, Ms. Whelan, an

13 employee of BMI/PNNL, ordered that Mr. Philip Pulver no longer contact lab

14 staff for sub-contracting services as he had done since 1995.  Ms. Whelan refused

15 to issue anymore work orders on PULVER/CATALOGS subcontract despite

16 requests from BMI/PNNL staff.  Mr. Sandusky, BMI/PNNL employee, told

17 PULVER/CATALOGS that senior management at BMI/PNNL had intervened in

18 his contract.  It is understood that Mr. George Romano, on behalf of BMI/PNNL,

19 was the representative responding to the PULVER/CATALOGS complaint to the

20 DOE-OIG.

21

22    In February 2005 PULVER/CATALOGS reported the BMI/PNNL, via

23 JOHN DOES I THROUGH XX,  sabotage of the PalmFon software

24 demonstrating a pattern and practice of BMI/PNNL and its representatives in

25 having operable and functional PalmFon software but delivering non-functional

26 and non-operable PalmFon software, in January 2002, compared with having

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 29 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

operable and functional MDM software but delivering non-functional and non-operable MDM software in August 2003.

## **FIRST CAUSE OF ACTION - MISREPRESENTATION** - **PALMFON**

36.  Plaintiffs re-allege paragraphs 1 through 35A.

37.  Misrepresentation of the operability and functionality of the PalmFon software was accomplished by BMI/PNNL, Mr. Parkinson and Mr. Goodwin by solicitations to PULVER/CATALOGS to commercialize PalmFon via conferences, telephone calls, wire including internet, telephone and email comprising misrepresentation and wire fraud pursuant to 18 U.S.C.A. § 1343. The misrepresentations of BMI/PNNL, Mr. Parkinson and Mr. Goodwin  were made with the intent to cause PLAINTIFFS to act to develop business and marketing plans, form business relations for the purpose of advancing the PalmFon software into the market and to cause PULVER/CATALOGS to be delayed into entering the market for products such as PalmFon software so that BMI/PNNL, Mr. Parkinson, Mr. Dorow, Mr. Goodwin and other BMI/PNNL representatives could advance a similar product into commercialization for the benefit or the conspiring parties.

The misrepresentation and delivery of inoperable and non-functional PalmFon software, the preparation of which BMI/PNNL and Mr. Parkinson were paid by DOE, denied DOE royalties and damaged PULVER/CATALOGS in amounts to be proven at the time of trial.  The PalmFon software was produced by BMI/PNNL and Mr. Parkinson and others through funding from DOE.

In the alternative, the PalmFon software was operable and functional as

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 30 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

represented by BMI/PNNL, Mr. Parkinson and Mr. Goodwin, but was rendered,

BMI/PNNL, Mr. Parkinson, Mr. Goodwin and other unknown JOHN DOES I

through XX,  inoperable and or dysfunctional prior to delivery of the PalmFon

software source code to PULVER/CATALOGS in January 2002 which,

misrepresented by BMI/PNNL, Mr. Parkinson and Mr. Goodwin, as operational

and functional at which time the PalmFon software Licensing Agreement was

executed.

The misrepresentation of the PalmFon software as operational and

functional or the rendering inoperable and dysfunctional of the PalmFon software

for delivery to PULVER/CATALOGS for the licensing of PalmFon software, was

a part of a pattern of activity or a scheme and were accomplished via conferences,

telephone calls, wire including internet, telephone and email comprising

misrepresentation and wire fraud pursuant to 18 U.S.C.A. § 1343.

BMI/PNNL and Mr. Goodwin and other unknown BMI/PNNL

representatives identified as JOHN DOES I through XX, intentionally prolonged

and extended negotiations with PULVER/CATALOGS, for the licensing of

PalmFon software, commencing on or about July 2001 through January 2002.

The negotiations and intentional prolonging of the negotiations, for the licensing

of PalmFon software, was a part of a pattern of activity or a scheme and were

accomplished via conferences, telephone calls, wire including internet, telephone

and email comprising misrepresentation and wire fraud pursuant to 18 U.S.C.A. §

1343.  A Licensing Agreement of PalmFon software to PULVER/CATALOGS

was executed on behalf of BMI/PNNL by Mr. Schwenk as Contracting Officer.

The  misrepresentation of PalmFon software as operational and functional,

or of rendering inoperable and dysfunctional PalmFon software and the intentional

prolonging of negotiations was a scheme having the intent to delay or prevent

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 31 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

PULVER/CATALOGS from entering the market with PalmFon software or a product having PalmFon software attributes while allowing BMI/PNNL, Mr. Parkinson and Mr. Goodwin, and other unknown JOHN DOES I through XX to advance PalmFon software or a different BMI/PNNL mobile product into the market.  BMI/PNNL, Mr. Parkinson and Mr. Goodwin, and unknown JOHN DOES I through XX conspired in creating and knew of the misrepresentations, the disabling, and the scheme and plan to prevent PULVER/CATALOGS from engaging in the market for a product having PalmFon software attributes.

PULVER/CATALOGS did not know of the misrepresentation and damages relative to PalmFon software until March 2002 when PULVER/CATALOGS approached BMI/PNNL and Mr. Dorow seeking assistance in operating and advancing the PalmFon software for use with InterSystems, Inc. at which time BMI/PNNL through Mr. Dorow conducted further operability and functionality examinations of PalmFon software and with Mr. Dorow advising of the inoperability and functionality of PalmFon software in March 2002 at which time BMI/PNNL and Mr. Dorow commenced receiving payment from pre-existing DOE-TAP funds authorized for PULVER/CATALOGS, for the purpose of preparing for a trade show demonstration, scheduled for April 2002, involving new mobile data software to replace the dysfunctional PalmFon software. Thereafter BMI/PNNL, Mr. Dorow and other unknown BMI/PNNL representatives received payment from DOE-TAP funds specifically designated for use to enhance PNNL PalmFon software to change databases on handheld devices.

These matters were reported to the DOE-OIG in February 2005.

**SECOND CAUSE OF ACTION - CONSPIRACY -  PALMFON**

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 32 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1

2          38.  Plaintiffs re-allege paragraphs 1 through 37.

3

4          39.  Concerted acts and acts of combination to misrepresent the operability

5   and functionality of the PalmFon software was accomplished by BMI/PNNL, Mr.

6   Parkinson and Mr. Goodwin by solicitations to PULVER/CATALOGS to

7   commercialize PalmFon via conferences, telephone calls, wire including internet,

8   telephone and email comprising misrepresentation and wire fraud pursuant to 18

9   U.S.C.A. § 1343.  The acts of conspiracy of BMI/PNNL, Mr. Parkinson and Mr.

10  Goodwin  were made with the intent to cause PLAINTIFFS to act to develop

11  business and marketing plans, form business relations for the purpose of

12  advancing the PalmFon software into the market and to cause

13  PULVER/CATALOGS to be delayed into entering the market for products such

14  as PalmFon software so that BMI/PNNL, Mr. Parkinson, Mr. Goodwin and other

15  BMI/PNNL representatives could advance a similar product into

16  commercialization for the benefit or the conspiring parties.

17          The acts of conspiracy in misrepresentation and of delivery of inoperable

18  and non-functional PalmFon software, the preparation of which BMI/PNNL and

19  Mr. Parkinson were paid by DOE, denied DOE royalties and damaged

20  PULVER/CATALOGS in amounts to be proven at the time of trial.  The PalmFon

21  software was produced by BMI/PNNL and Mr. Parkinson and others through

22  funding from DOE.  The conspiracy to delay or deny PULVER/CATALOGS

23  entry into the market place was additionally a conspiracy to deny DOE royalties or

24  other licensing fees from the licensing of the PalmFon software.

25          In the alternative, the PalmFon software was operable and functional as

26  represented by BMI/PNNL, Mr. Parkinson and Mr. Goodwin, but was rendered,

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 33 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1   by the concerted and conspiring acts of BMI/PNNL, Mr. Parkinson, Mr. Goodwin

2   and other unknown JOHN DOES I through XX,  inoperable and or dysfunctional

3   prior to delivery of the PalmFon software source code to PULVER/CATALOGS

4   in January 2002 which, through concerted and conspiring acts, was

5   misrepresented by BMI/PNNL, Mr. Parkinson and Mr. Goodwin as operational

6   and functional.  BMI/PNNL and Mr. Goodwin and other unknown BMI/PNNL

7   representatives identified as JOHN DOES I through XX, intentionally prolonged

8   and extended negotiations with PULVER/CATALOGS, for the licensing of

9   PalmFon software, commencing on or about July 2001 through January 2002.

10   The negotiations and intentional prolonging of the negotiations, for the licensing

11   of PalmFon software, was a part of a pattern of activity or a scheme and were

12   accomplished via conferences, telephone calls, wire including internet, telephone

13   and email comprising misrepresentation and wire fraud pursuant to 18 U.S.C.A. §

14   1343.  A Licensing Agreement of PalmFon software to PULVER/CATALOGS

15   was executed on behalf of BMI/PNNL by Mr. Schwenk as Contracting Officer.

16   The conspiracy of misrepresentation of PalmFon software as operational and

17   functional, or of rendering inoperable and dysfunctional PalmFon software and

18   the intentional prolonging of negotiations was a scheme having the intent to delay

19   or prevent PULVER/CATALOGS from entering the market with PalmFon

20   software or a product having PalmFon software attributes while allowing

21   BMI/PNNL, Mr. Parkinson and Mr. Goodwin and other unknown JOHN DOES I

22   through XX to advance PalmFon software or a different BMI/PNNL mobile

23   product into the market.  BMI/PNNL, Mr. Parkinson and Mr. Goodwin, and

24   unknown JOHN DOES I through XX conspired in creating and knew of the

25   misrepresentations, the disabling, and the scheme and plan to prevent

26   PULVER/CATALOGS from engaging in the market for a product having

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 34 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

1  PalmFon software attributes.

2      PULVER/CATALOGS did not know of the conspiracy of

3  misrepresentation and damage until the summer or fall of 2002. In March 2002

4  PULVER/CATALOGS approached BMI/PNNL and Mr. Dorow seeking

5  assistance in operating and advancing the PalmFon software for use with

6  InterSystems, Inc. at which time BMI/PNNL through Mr. Dorow conducted

7  further operability and functionality examinations of PalmFon software and with

8  Mr. Dorow advising of the inoperability and absence of functionality of PalmFon

9  software in March 2002 at which time BMI/PNNL and Mr. Dorow commenced

10  receiving payment from pre-existing DOE-TAP funds authorized for

11  PULVER/CATALOGS, for the purpose of preparing for a trade show

12  demonstration, scheduled for April 2002, involving PalmFon software. Thereafter

13  BMI/PNNL, Mr. Dorow and other representatives of BMI/PNNL received

14  payments for these efforts from DOE-TAP agreements.

15      These matters were reported to the DOE-OIG in February 2005.

16

17  **THIRD CAUSE OF ACTION - UNFAIR COMPETITION AND UNFAIR**

18  **BUSINESS PRACTICES - PALMFON**

19

20      40. Plaintiffs re-allege paragraphs 1 through 39.

21

22      41. The acts, heretofore alleged, of BMI/PNNL by its representatives, Mr.

23  Parkinson and Mr. Goodwin and unknown JOHN DOES I through XX, comprise

24  unfair methods of competition and or unfair or deceptive acts or practices in the

25  conduct of trade or commerce in violation of RCW 19.86 et seq, causing damages

26  to Plaintiffs in amounts as shall be proven at the time of trial.

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 35 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    These matters regarding PalmFon software were reported to the DOE-OIG
2    in February 2005.

3

4    **FOURTH CAUSE OF ACTION -INTERFERENCE WITH BUSINESS**
5    **EXPECTANCY- PALMFON**

6

7    42.  Plaintiffs re-allege paragraphs 1 through 41

8

9    43.  As alleged in prior paragraphs, upon commencement of the BMI/PNNL
10   and Mr. Parkinson solicitation for the licensing of PalmFon,
11   PULVER/CATALOGS undertook extensive marketing activities, sales channel
12   development and market analysis.  PULVER/CATALOGS disclosed to
13   BMI/PNNL representatives Mr. Parkinson, Ms. Vickie Birkenthal, Mr. Goodwin
14   and other unknown JOHN DOES I through XX, the positive response from
15   prospective PalmFon marketing partners and end-users to PULVER/CATALOG'S
16   PalmFon announcements in the Commerce Business Daily in the fall of 2001.

17   BMI/PNNL, Mr. Parkinson, Ms. Vickie Birkenthal, Mr. Goodwin and other
18   unknown JOHN DOES I through XX knew of this positive response to PalmFon
19   and its functionality represented to PULVER/CATALOGS by BMI/PNNL since
20   June 2001 and, by improper means and for improper purposes, intentionally
21   interfered with the functionality and operability of PalmFon and the licensing of
22   PalmFon inducing or causing the loss of the business opportunity with industry
23   prospects including InterSystems Inc. causing PULVER/CATALOGS damages,
24   including punitive damages pursuant to RCW 19.86 et seq and attorney fees, in
25   amounts to be proven at trial.

26   These matters regarding PalmFon software were reported to the DOE-OIG

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 36 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  in February 2005.

2

3      **FIFTH CAUSE OF ACTION -BREACH OF FIDUCIARY DUTY -**

4                                    **PALMFON**

5      44.  Plaintiffs re-allege paragraphs 1 through 43.

6

7      45.  Defendants BMI/PNNL, Mr. Parkinson, Mr. Goodwin and other

8  unknown JOHN DOES I through XX, advertised the functionality and operability

9  of the PalmFon software and solicited Plaintiffs to License and commercialize the

10 PalmFon software; the said Defendants had, at the time of advertising and or

11 solicitation or at least prior to the execution of a Licensing Agreement with

12 Plaintiffs for PalmFon software, a conflict of interest or a self-interest in further

13 development of and in commercializing the PalmFon software in competition with

14 Plaintiffs; the Defendants' had a Fiduciary Duty to Plaintiffs; the said Defendants

15 did not disclose Defendants' conflict of interest or self-interest and engaged in a

16 course of conduct comprising a breach of their Fiduciary Duty to plaintiffs which

17 allowed the interests of the said Defendants to be advanced to the detriment and

18 damage of the Plaintiffs in an amount which shall be proven at the time of trial.

19

20    **SIXTH CAUSE OF ACTION -TRADE SECRET MISAPPROPRIATION  -**

21                                     **MDM**

22     46.  Plaintiffs re-allege paragraphs 1 through 45.

23

24     47.  PULVER/CATALOGS, in November 2001 acquired the domain name

25 www.mobiledatamanager.com and proposed to develop a product having features

26 in addition to those represented to be found in PalmFon software.  The new

27

28
FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 37 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  product was named Mobile Data Manager, hereafter MDM.  By March 2002,

2  PULVER/CATALOGS had conceived of and began developing the specification

3  for MDM, a software product designed for handheld PDA users to

4  receive(download) and send(upload) information to and from standard databases.

5  By March 2002, PULVER/CATALOGS had conducted extensive market research

6  demonstrating the marketing potential for MDM.  The PULVER/CATALOGS

7  MDM specification and MDM/PalmFon market research comprises valuable

8  Trade Secret information protected by RCW 19.108.et seq, the Economic

9  Espionage Act 18 U.S.C.A. § 1832, (a) and the  Cooperative research and

10  development act 15 U.S.C.A. § 3710a(c)(7)(A).

11        PULVER/CATALOGS divulged the MDM specification and

12  MDM/PalmFon market research to BMI/PNNL, Mr. Dorow, Mr. Goodwin and

13  others during the technical assistance provided by BMI/PNNL via its

14  representatives.  PULVER/CATALOGS, prior to March 2002, had qualified for

15  and had DOE-TAP funding available to obtain technical assistance from

16  BMI/PNNL.  PULVER/CATALOGS approached BMI/PNNL representative Mr.

17  Dorow, discussed with Mr. Dorow the PalmFon software and stated to Mr. Dorow

18  the initial specification of the new MDM product and disclosed the marketing

19  research; Mr. Dorow and BMI/PNNL agreed to provide technical assistance to

20  PULVER/CATALOGS in return for payment from the DOE-TAP funds available

21  to PULVER/CATALOGS.  BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Dr.

22  Gary Spanner and other BMI/PNNL employees represented to

23  PULVER/CATALOGS that the BMI/PNNL assistance was being provided for the

24  benefit of PULVER/CATALOGS in accordance with the BMI/PNNL

25  representations of the purposes of the DOE-TAP funds.

26        After numerous consultations with PULVER/CATALOGS in March and

27

28  
FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 38 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

April 2002, Mr. Dorow developed a prototype MDM version that had functionality sufficient for PULVER/CATALOGS to demonstrate the MDM prototype at an InterSystems Inc. booth at a  Salt Lake City trade show. BMI/PNNL and Mr. Dorow invoiced and were paid for these efforts from DOE-TAP funds authorized from one or more sources including the PULVER/CATALOGS preexisting DOE-TAP, DOE-TAP funds authorized by Dr. Gary Spanner on April 8, 2002.  Subsequently DOE-TAP funds authorized for MDM development for Mr. Dave Dillman and DOE-TAP funds authorized for others in late 2002.

Thereafter, commencing in approximately August 2002, PULVER/CATALOGS concluded that BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris  and others including JOHN DOES I through XX, misappropriated the PULVER/CATALOGS Trade Secrets relative to the MDM Specification and associated marketing information including specific sales opportunities, and, while representing to undertake work on behalf of PULVER/CATALOGS, BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris and others, were developing in parallel, using the specification and the marketing analysis and information acquired from PULVER/CATALOGS for the purpose of producing a mobile product to be  produced for or placed in interstate or foreign commerce and with the intent of achieving an economic benefit for BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva and others to the disadvantage of PULVER/CATALOGS; BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris and others did these acts of misappropriation intending and knowing that the offense would injure PULVER/CATALOGS.

In December 2002 Mr. Dorow demonstrated the operable and functional MDM software to PULVER/CATALOGS.  BMI/PNNL, Mr. Dorow, Mr.

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 39 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  Goodwin and others refused to deliver operable and functional MDM software to

2  PULVER/CATALOGS advising that BMI/PNNL would place their parallel

3  mobile product into commercialization and requiring PULVER/CATALOGS to

4  pay additional consultation fees for additional advancement of the MDM

5  software.  In May 2003 Mr. Dorow again demonstrated a operable and functional

6  MDM software to PULVER/CATALOGS.  MDM software source code was

7  delivered to PULVER/CATALOGS on August 29, 2003.  The MDM software

8  was inoperable and non-functional with this confirmed by independent computer

9  consultants.   Mr. Dorow admitted, in September 2003, that the MDM software

10  delivered to PULVER/CATALOGS was embarrassing, inoperable and non-

11  functional; Mr. Dorow then again offered to demonstrate operational and

12  functional  BMI/PNNL mobile software if PULVER/CATALOGS could arrange

13  for demonstrations with customers leading to income for BMI/PNNL.

14      The PULVER/CATALOGS trade secret information was information

15  deriving independent economic value from not being generally known to, not

16  being readily ascertainable by proper means by other persons, including

17  BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka and

18  other who were able to obtain economic value from its disclosure or use.  The

19  indicated MDM specification and marketing analysis was disclosed to BMI/PNNL

20  and Mr. Dorow pursuant to the DOE-TAP assistance.

21      BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris and others

22  revealed their plans to own and control MDM with their misappropriation

23  undertaken and revealed, to PULVER/CATALOGS, by wire including telephone,

24  email, internet and facsimile transmission demonstrating a scheme to defraud

25  PULVER/CATALOGS by taking the MDM specification and Marketing Analysis

26  from PULVER/CATALOGS for the personal gain of BMI/PNNL, Mr. Dorow and

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 40 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1 Mr. Goodwin and others with the scheme advanced by use of the wires in

2 furtherance of the scheme and with the specific intent to deceive or defraud

3 PULVER/CATALOGS regarding the development of the MDM product for

4 PULVER/CATALOGS.

5      The misappropriation of the MDM specification and marketing analysis, the

6 delay in the delivery of  and the delivery of the MDM software source code in an

7 inoperable and non-functional state was a part of a pattern of activity or a scheme

8 and was accomplished via conferences, telephone calls, wire including internet,

9 telephone and email comprising wire fraud pursuant to 18 U.S.C.A. § 1343.

10      These matters were reported to the DOE-OIG in October, 2003.

11

12 **SEVENTH CAUSE OF ACTION -MISREPRESENTATION  -  MDM**

13      48.  Plaintiffs re-allege paragraphs 1 through 47.

14

15      49.  PULVER/CATALOGS re-alleges in particular paragraph 47.

16      PULVER/CATALOGS divulged, in March through August 2002, the

17 MDM specification and MDM/PalmFon market research to BMI/PNNL, Mr.

18 Dorow, Mr. Goodwin and others for the purpose of securing BMI/PNNL

19 assistance.  PULVER/CATALOGS approached BMI/PNNL representative Mr.

20 Dorow, discussed with Mr. Dorow the PalmFon software and stated to Mr. Dorow

21 the initial specification of the new MDM product and disclosed the marketing

22 research; Mr. Dorow and BMI/PNNL agreed to provide technical assistance to

23 PULVER/CATALOGS in return for payment from the DOE-TAP funds available

24 to PULVER/CATALOGS.  BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva and

25 others mis-represented to PULVER/CATALOGS that the BMI/PNNL assistance

26 was being provided for the benefit of PULVER/CATALOGS in accordance with

27

28 FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 41 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

the BMI/PNNL representations of the purposes of the DOE-TAP funds.

Mr. Dorow, receiving payment from DOE-TAP funds authorized for PULVER/CATALOGS, developed a prototype MDM version that had functionality sufficient for PULVER/CATALOGS to demonstrate the MDM prototype at an InterSystems Inc. booth at a  Salt Lake City trade show in April 2002.  PULVER/CATALOGS conferred numerous times with Mr. Dorow following the April 2002 trade show relative to evolutions of the MDM specification.

The misrepresentations by BMI/PNNL, Mr. Dorow, Mr. Goodwin and others that they were providing Technical Assistance for PULVER/CATALOGS constituted material misrepresentations of existing fact; the falsity of which was known to BMI/PNNL, Mr. Dorow and Mr. Goodwin, were made with the intent to cause PLAINTIFFS to act or refrain from acting with respect to the development of an MDM product by means independent of BMI/PNNL, to not enter the mobile product market and to not be competitive with a BMI/PNNL mobile product with BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Farris, Ms. Cejka, Mr. Schwenk and others knowing of PLAINTIFFS' ignorance of the falsity of the misrepresentations.  PLAINTIFFS' relied on and had the right to rely on the truth of the representation with resulting damage to PLAINTIFFS in amounts to be proven at the time of trial.  The misrepresentations and acts of delivery of inoperable and non-functional MDM software, for which BMI/PNNL and Mr. Dorow and other employees and representatives of BMI/PNNL were paid by DOE, denied DOE royalties for sales of MDM software and constituted fraud against DOE.

Commencing in approximately August 2002, PULVER/CATALOGS concluded that BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms.

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 42 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

Cejka and others including JOHN DOES I through XX, were misappropriating the PULVER/CATALOGS Trade Secrets relative to the MDM, and, while representing to undertake work on behalf of PULVER/CATALOGS, BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris and others, were developing in parallel, using the specification and the marketing analysis and information acquired from PULVER/CATALOGS for the purpose of producing a mobile product to be  produced for or placed in interstate or foreign commerce and with the intent of achieving an economic benefit for BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk and others to the disadvantage of PULVER/CATALOGS; BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk  and others did these acts of misappropriation intending and knowing that the offense would injure PULVER/CATALOGS; such acts were  accomplished by the misrepresentations, with the intent that PULVER/CATALOGS justifiably relied upon and did rely upon and with the concerted efforts of BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk and others to misappropriate said trade secrets.  Defendants, by misappropriation, concealment, fraud, artifice or deception  obtained such trade secret information through multiple personal conferences, by wire including telephone, internet and email all to the damage of PULVER/CATALOGS.  While accomplishing such misappropriation of trade secrets, BMI/CATALOGS were paid from DOE-TAP funds authorized from one or more sources including the DOE-TAP funds authorized by Dr. Gary Spanner on April 8, 2002 and DOE-TAP funds authorized for Mr. Dave Dillman and others.

BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, and others revealed their plans to own and control MDM with their misappropriation undertaken and

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 43 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1   revealed by wire including telephone, email, internet and facsimile transmission

2   demonstrating a scheme to defraud PULVER/CATALOGS by taking the MDM

3   specification and Marketing Analysis from PULVER/CATALOGS for the

4   personal gain of BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris,

5   Ms. Cejka, Mr. Schwenk with the scheme advanced by use of the wires in

6   furtherance of the scheme and with the specific intent to deceive or defraud

7   PULVER/CATALOGS regarding the development of the MDM product for

8   PULVER/CATALOGS.

9        The misrepresentation that the MDM specification and marketing analysis

10  was being used for the preparation of an MDM product for

11  PULVER/CATALOGS, the delay in the delivery of and the delivery of the MDM

12  software source code in an inoperable and non-functional state was a part of a

13  pattern of activity or a scheme and was accomplished via conferences, telephone

14  calls, wire including internet, telephone and email comprising wire fraud pursuant

15  to 18 U.S.C.A. § 1343.

16       The acts of BMI/PNNL by and through its representatives including Mr.

17  Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk and others

18  comprise false representations made by the defendants to the effect that

19  BMI/PNNL and the defendants were advancing and preparing a MDM software

20  product for PULVER/CATALOGS; defendant's knew or believed that the

21  representations made to PULVER/CATALOGS were false with the

22  representations made with the intention to induce the PULVER/CATALOGS to

23  act or refrain from acting relative to the development of MDM and in advancing

24  marketing of MDM pursuant to the marketing strategy and analysis undertaken by

25  PULVER/CATALOGS, in reliance upon the misrepresentation, while the

26  Defendants advanced the MDM product for their benefit; plaintiffs

27

28

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 44 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

PULVER/CATALOG justifiably relied on the misrepresentation by BMI/PNNL and other defendants to the effect that they were developing the MDM product for PULVER/CATALOGS causing PULVER/CATALOGS to lose sales and sales opportunities to the damage of the plaintiffs proximately caused by such reliance.

There matters were reported to the DOE-OIG in October 2003.


**EIGHTH CAUSE OF ACTION - CONSPIRACY -  MDM**

50.  Plaintiffs re-allege paragraphs 1 through 49.


51.  PULVER/CATALOGS re-allege in particular paragraphs 47 and 49. Concerted acts and acts of combination to misappropriate trade secrets of PULVER/CATALOGS, to misrepresent the Technical Assistance for the benefit of PULVER/CATALOGS in developing the MDM software, the delay in the delivery of the MDM software and the delivery of MDM software which was inoperable  and non-functional was accomplished by BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva and others by conferences, telephone calls, wire including internet, telephone and email comprising wire fraud pursuant to 18 U.S.C.A. § 1343.

The acts of conspiracy of BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk and others were made with the intent to cause PLAINTIFFS to act to develop business and marketing plans, form business relations for the purpose of advancing the MDM software into the market and to cause PULVER/CATALOGS to be delayed into entering the market for products such as MDM software so that BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka, Mr. Schwenk  and other BMI/PNNL representatives could advance a similar product into commercialization for the

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 45 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    benefit of the conspiring parties.

2    The acts of conspiracy in misappropriation and misrepresentation and of

3    delay in delivery and of delivery of inoperable and non-functional MDM software,

4    the preparation of which BMI/PNNL, Mr. Dorow and others were paid by DOE-

5    TAP funds, acted to defraud DOE and denied DOE royalties or other licensing

6    fees and damaged PULVER/CATALOGS in amounts to be proven at the time of

7    trial.  The MDM software was produced by BMI/PNNL and Mr. Dorow others

8    through funding from DOE.  The conspiracy to delay or deny

9    PULVER/CATALOGS entry into the market place was additionally a conspiracy

10    to deny DOE royalties or other licensing fees from the licensing of the MDM

11    software.

12    PULVER/CATALOGS did not know of the conspiracy of

13    misrepresentation and damage until the summer or fall of 2003.

14    These matters were reported to the DOE-OIG in October 2003.

15

16    **NINTH CAUSE OF ACTION - <u>UNFAIR COMPETITION AND UNFAIR</u>**

17    **<u>BUSINESS PRACTICES - MDM</u>**

18

19    52.  Plaintiffs re-allege paragraphs 1 through 51.

20

21    53.  The acts, heretofore alleged, of BMI/PNNL by its representatives, Mr.

22    Dorow, Mr. Goodwin, Mr. Silva, Mr. Farris, Ms. Cejka and other unknown JOHN

23    DOES I through XX, comprise unfair methods of competition and or  and unfair

24    or deceptive acts or practices in the conduct of trade or commerce in violation of

25    RCW 19.86 et seq, causing damages and future damages to Plaintiffs, including

26    punitive damages pursuant to RCW 19.86 et seq and attorney fees, in  amounts to

27

28    FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 46 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    be proven at trial.

2         These matters were reported to the DOE-OIG in October 2003.

3

4    **TENTH CAUSE OF ACTION -INTERFERENCE WITH BUSINESS**

5    **EXPECTANCY- MDM**

6

7    54.  Plaintiffs re-allege paragraphs 1 through 53

8

9    55.  As alleged in prior paragraphs, PULVER/CATALOGS undertook

10   extensive market analysis to project the potential revenue from sales related to

11   MDM software with potential revenue indicated at several million dollars; this

12   market analysis was made available to BMI/PNNL, Mr. Dorow, Mr. Goodwin,

13   Mr. Silva and other representatives of BMI/PNNL; InterSystems Inc., a principal

14   provider of products and services to the healthcare industry and other industries

15   represented a potential client upon successful development and or licensing and

16   operation of a device meeting MDM specifications.  PULVER/CATALOGS

17   recognized the existence of a valid contractual relationship or business

18   expectancy.  Marketing research and analysis by PULVER/CATALOGS, which

19   was shared with BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva and other

20   employees of BMI/PNNL, demonstrated a market potential for sales and revenues

21   of several million dollars; BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Farris and

22   others knew of these relationships and, by improper means and for improper

23   purposes, intentionally interfered with the functionality and operability of MDM

24   software and the licensing of MDM to Plaintiffs inducing or causing the loss of

25   the business opportunity with industry prospects including but not limited to

26   InterSystems Inc. causing PULVER/CATALOGS damages and future damages,

27

28   FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 47 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  including punitive damages pursuant to RCW 19.86 et seq and attorney fees, in

2  amounts to be proven at trial.

3        These matters were reported to the DOE-OIG in October 2003.

4

5  **ELEVENTH CAUSE OF ACTION -BREACH OF FIDUCIARY DUTY -**

6  **MDM**

7        56.  Plaintiffs re-allege paragraphs 1 through 55.

8

9        57.  Defendants BMI/PNNL, Mr. Dorow, Mr. Goodwin, Mr. Silva and other

10 unknown JOHN DOES I through XX, received from PULVER/CATALOGS the

11 MDM specification and marketing analysis, both constituting trade secret

12 properties, under the guise of providing Technical Assistance pursuant to and with

13 the receipt of DOE-TAP funding and solicited Plaintiffs to disclose additional

14 information re: product specification and marketing analysis under the pretext of

15 advancing product development for PULVER/CATALOGS and for the purpose of

16 PULVER/CATALOGS to commercialize the MDM software; the said Defendants

17 had, at the time of communications with PULVER/CATALOGS re: the MDM

18 specification and marketing analysis or at least prior to the execution of a

19 Licensing Agreement with Plaintiffs for MDM  software, a conflict of interest or a

20 self-interest in further development of and in commercializing the MDM software

21 in competition with Plaintiffs; the Defendants' had a Fiduciary Duty to Plaintiffs;

22 the said Defendants did not disclose Defendants' conflict of interest or self-

23 interest and engaged in a course of conduct comprising a breach of their Fiduciary

24 Duty to plaintiffs which allowed the interests of the said Defendants to be

25 advanced to the detriment and damage of the Plaintiffs in an amount which shall

26 be proven at the time of trial.

27

28  FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 48 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

58.     For compensatory damages in amounts to be proven at the time of trial;

59.     Prejudgment interest;

60.     Punitive damages in an amount to be proven at the time of trial;

61.     Reasonable, actual and statutory attorney's fees, costs and disbursements in an amount to be determined at the time of trial as authorized by statute, contract or some well recognized ground in equity;

62.     For such other and further relief which the court shall deem just and equitable.

Dated this 28th day of June, 2005.

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE


s/ FLOYD E. IVEY
FLOYD E. IVEY, WSBA #6888
Attorneys for Plaintiffs

509 735 3581;
509 735 3585(fax)

FIRST AMENDED COMPLAINT FOR TRADEMARK
INFRINGEMENT, TRADEMARK DILUTION, UNFAIR
COMPETITION, DAMAGES, PUNITIVE DAMAGES AND
INJUNCTIVE RELIEF
Page 49 of 49
Z:\IPClient\Pulver\Pulver v.
PNNL\Pleadings\Complaint.IveyAmendmentsFINAL.050628.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581